**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 19-cv-00347-DDD-STV

PAUL M. GEORGOPULOUS,

      Plaintiff,

v.

PPM CAPITAL, INC.,

      Defendant.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

Magistrate Judge Scott T. Varholak

      This matter comes before the Court on Plaintiff Paul M. Georgopulos' Motion for Default Judgment Against PPM Capital, Inc. on a Sum Certain (the "Motion") [#36], which has been referred to this Court [#37]. The Court has considered the Motion and the related briefing, the entire case file, and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the Motion. For the following reasons, this Court respectfully **RECOMMENDS** that Plaintiff's Motion be **GRANTED IN PART** and **DENIED IN PART**.

## I.    BACKGROUND[1]

      In 2016, Plaintiff obtained an Ace Cash loan for $200 (the "subject debt"). [#1 at ¶ 6] Plaintiff was unable to keep up with the payments on the subject debt, causing Plaintiff to default. [*Id.*] In December 2018, Defendant acquired the right to collect on the subject

---

[1] The Court draws the factual background from the allegations in Plaintiff's Complaint. [#1]

1

debt while it was in default, and began placing calls to Plaintiff's cell phone, his fiancé's cell phone, and his fiancé's daughter's cell phone. [*Id.* at ¶¶ 7-8] Plaintiff's fiancé answered a call from Defendant, during which Defendant stated that it was looking for Plaintiff, and that Plaintiff owed the subject debt. [*Id.* at ¶ 10] A representative for Defendant also left voicemail messages on Plaintiff's cell phone and Plaintiff's fiancé's daughter's cell phone, stating that Defendant would be sending a uniformed officer to Plaintiff's home or place of work, in order to serve him with paperwork for a lawsuit filed against him in connection with the subject debt. [*Id.* at ¶¶ 11-12] Defendant then began placing harassing and high-volume calls to Plaintiff's cell phone. [*Id.* at ¶ 13]

After the harassing calls began, Plaintiff contacted Defendant. [*Id.* at ¶ 14] In that call, Defendant's representative demanded that Plaintiff satisfy the subject debt, or he would face criminal charges for defrauding a financial institution. [*Id.*] Defendant also instructed Plaintiff to purchase a pre-paid card and deposit $100 onto the card every other week, to satisfy the subject debt through a payment plan. [*Id.*] Plaintiff followed those instructions and made two payments of $105 to Defendant. [*Id.* at ¶ 15] On the days prior to each payment, Defendant repeatedly called and sent text messages to Plaintiff's cell phone, conveying that Plaintiff was in breach of the payment contract. [*Id.* at ¶ 16]

On January 30, 2019, Plaintiff called Defendant to ask if he could make reduced payments on the subject debt. [*Id.* at ¶ 17] Defendant refused to change the payment agreement, falsely communicating that it was a binding contract. [*Id.*] Plaintiff demanded that Defendant stop calling him, but Defendant persisted its harassing phone calls and text messages to Plaintiff's cell phone. [*Id.* at ¶¶ 17-18] On February 2, 2019, beginning at 7:20 a.m., Defendant called Plaintiff nine times in five minutes. [*Id.* at ¶ 19] Plaintiff

again called Defendant, demanding that it stop harassing him, but Defendant continued the phone harassment, and a representative of Defendant called Plaintiff a "piece of shit." [*Id.* at ¶¶ 20-21]  Plaintiff never provided his cell phone number to Defendant and never expressly consented to Defendant's phone calls.  [*Id.* at ¶ 24]  Plaintiff believes that Defendant places calls to his cell phone using an automated telephone dialing system, based on an unnatural pause when Plaintiff answered calls from Defendant, during which time Defendant's automated telephone dialing system would attempt to connect Plaintiff to a live agent.  [*Id.* at ¶¶ 25-28]  Plaintiff ultimately filed a harassment report with his local police department due to the volume of calls and text messages from Defendant.  [*Id.* at ¶ 23]

Plaintiff brought this action seeking damages for Defendant's alleged harassing phone calls and unlawful attempts to collect on the subject debt.  [*See generally* #1]  Plaintiff asserts violations of the Fair Debt Collection Practices Act ("FDCPA"), the Telephone Consumer Protection Act ("TCPA"), and the Colorado Fair Debt Collection Practices Act ("CFDCPA").  [*Id.* at 7-15]   Plaintiff seeks $38,500 in statutory damages and $3,997.75 in attorneys' fees and costs.  [#36 at 2-3]

Plaintiff served Defendant through its registered agent.  [##6, 12]  Defendant waived service of the summons on April 3, 2019.  [#12]  Attorney Veronica Vecchio entered her appearance on behalf of Defendant on April 8, 2019. [#16]  Two weeks later, Attorney Vecchio sought to withdraw as counsel for Defendant.  [#17]  This Court held a hearing on that motion, granted Attorney Vecchio's motion to withdraw, and advised Defendant that it could not appear pro se in this matter and would need to retain new counsel.  [#22, audio recording at 10:33:08-10:33:47]  The Court allowed Defendant until

3

May 13, 2019 to retain new counsel, and advised that failure to do so could lead to a recommendation of default judgment for failure to defend. [*Id.*] When no new counsel entered an appearance on behalf of Defendant, the Court issued an order to show cause, ordering Defendant to show cause in writing on or before May 28, 2019, why this Court should not recommend that default and default judgment be entered against Defendant based on its lack of counsel. [#24] Defendant failed to respond to the Order to Show Cause, no new counsel has entered an appearance on behalf of Defendant, and the deadline for Defendant to respond to the Complaint has expired. [*See* #12] On June 5, 2019, this Court recommended that default be entered against Defendant. [#32] United States District Judge Daniel D. Domenico accepted that Recommendation [#33], and the Clerk of Court entered default as to Defendant on July 9, 2019 [#34]. Plaintiff moved for default judgment on July 30, 2019. [#36]

## II.    JURISDICTION

Before entering default judgment, the Court must consider whether it has subject matter and personal jurisdiction over Defendant. *See Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 772 (10th Cir. 1997); *Williams v. Life Sav. and Loan*, 802 F.2d 1200, 1202-03 (10th Cir. 1986). *But see Marcus Food Co. v. DiPanfilo* 671 F.3d 1159, 1170 (10th Cir. 2011) ("[W]e do not read *Garberg* to require an overt statement of jurisdiction unless a challenge has been raised by the defendant or, as other cases have suggested, where the complaint lacks any allegations supporting jurisdiction.").

The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 because Plaintiff asserts violations of several federal statutes. [*See generally* #1]

The Court exercises supplemental jurisdiction over Plaintiff's CFDCPA claim pursuant to 28 U.S.C. § 1367.

As to personal jurisdiction, courts in this District consider Colorado's long-arm statute, Colo. Rev. Stat. § 13-1-124, to be a codification of the "minimum contacts" test, which requires a defendant to have minimum contacts with the forum state such that bringing the defendant into court in Colorado would not offend "traditional notions of fair play and substantial justice," in accordance with the Due Process Clause.[2] *Brooks v. Tarsadia Hotels*, No. 17-cv-03172-PAB-KMT, 2018 WL 2301839, at *2 (D. Colo. May 21, 2018) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The Court has personal jurisdiction over Defendant because, according to the Complaint, Defendant "maintains significant business contacts in the District of Colorado," and a "substantial portion of the events . . . giving rise to the claims occurred within the District of Colorado." [#1 at ¶ 3] *See generally Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (explaining that the touchstone of personal jurisdiction is "whether the defendant purposefully established minimum contacts in the forum State"); *see also* Colo. Rev. Stat. § 13-1-124. Moreover, Plaintiff alleges that Defendant placed numerous calls to his cell phone number, which is associated with a Colorado area code, and Plaintiff is a Colorado

---

[2] In determining whether a federal court has personal jurisdiction over a nonresident defendant, the court must first determine "whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant," and second "whether the exercise of jurisdiction comports with due process." *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (quotations omitted). "Where, as here, the underlying action is based on a federal statute, the court applies state personal jurisdiction rules if the federal statute does not specifically provide for national service of process." *Toytrackerz LLC v. Koehler*, No. 08-2297-GLR, 2009 WL 1505705, at *3 (D. Kan. May 28, 2009). Because neither the FDCPA nor the TCPA authorize nationwide service of process, the Court looks to Colorado's long-arm statute. *See id.*; *see also Patrick v. N & G Capital LLC*, No. 2:14-CV-194 TS, 2014 WL 3547831, at *2 (D. Utah July 17, 2014).

resident. [*See* #1 at ¶¶ 4, 8] *See, e.g.*, *Lowe v. CVS Pharmacy, Inc.*, 233 F. Supp. 3d 636, 645 (N.D. Ill. 2017) ("[M]ultiple courts have found calls or text messages to a phone number affiliated with a particular state that violate the TCPA sufficient to satisfy the [purposeful direction] test for a court of that state to exercise personal jurisdiction over the defendant." (alterations in original) (quotation omitted) (collecting cases)). Defendant also threatened to take legal action against Plaintiff in connection to the subject debt, and because Plaintiff resides in Colorado, any action taken against Plaintiff would have occurred in Colorado. *Kuberski v. Cred X Debt Recovery, LLC*, No. 11-cv-03247-RPM-KLM, 2012 WL 2943726, at *6 (D. Colo. July 2, 2012) (finding defendant had minimum contacts with Colorado, where it contacted plaintiff, who resided in Colorado, allegedly in violation of the FDCPA, and threatened legal action against plaintiff). Finally, the FDCPA provides that "[a]n action to enforce any liability created by this subchapter may be brought in any appropriate United States district court." 15 U.S.C. § 1692k(d). Plaintiff alleges that Defendant violated six provisions of the FDCPA, "[t]herefore, exercising personal jurisdiction over Defendant in the forum where Plaintiff resides and was allegedly injured furthers the policy interests of all states." *Kuberski*, 2012 WL 2943726, at *8.

## III.   ANALYSIS

Plaintiff seeks entry of default judgment against Defendant for $42,497.75, consisting of $38,500 in statutory damages and $3,997.75 in attorneys' fees and costs, plus post-judgment interest.[3]   [#36 at 3; *see also* #36-2 at 2; #36-3]   Default may be

---

[3] Although Plaintiff's Motion is titled as seeking default judgment on a "sum certain", Plaintiff seeks entry of default by the Court under Federal Rule of Civil Procedure 55(b)(2) and thus the Court does not construe the Motion for Default Judgment as a motion pursuant to Fed. R. Civ. P. 55(b)(1) for a sum certain by the Clerk. [#36 at 1]

entered against a party who has failed to plead or otherwise defend. Fed. R. Civ. P. 55(a). Even after entry of default, the Court must consider whether the unchallenged facts constitute a legitimate basis for the entry of default judgment. *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010); *Malibu Media, LLC v. Ling*, 80 F. Supp. 3d 1231, 1239 (D. Colo. 2015). In determining whether a claim for relief has been established, the well-pleaded facts of the complaint are deemed true. *See United States v. Craighead*, 176 F. App'x 922, 924 (10th Cir. 2006); *Malibu Media*, 80 F. Supp. 3d at 1239. Undisputed facts set forth in any affidavits and exhibits are also accepted as true. *See Reg'l Dist. Council v. Mile High Rodbusters, Inc.*, 82 F. Supp. 3d 1235, 1242-43 (D. Colo. 2015).

## A. Claims

The Court first addresses the merits of Plaintiff's claims and then discusses Plaintiff's requests for statutory damages, attorneys' fees and costs, and post-judgment interest. Plaintiff's claims against Defendant in this matter arise pursuant to the FDCPA, the CFDCPA, and the TCPA. [#1 at 7-15] The Court addresses each claim in turn.

### 1. FDCPA Claims

The FDCPA is designed to "eliminate abusive debt collection practices by debt collectors . . . and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).

> To establish a violation of the FDCPA, plaintiff must show that (1) []he is a "consumer" within the meaning of 15 U.S.C. § 1692a(3), (2) h[is] debt arises out of a transaction entered into primarily for personal, family, or household purposes, 15 U.S.C. § 1692a(5), (3) defendant is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6), and (4) defendant, through its acts or omissions, violated a provision of the FDCPA.

*Terry v. WSA, LLC*, No. 14-cv-00324-PAB, 2014 WL 7403232, at *2 (D. Colo. Dec. 29, 2014) (footnotes omitted). Here, Plaintiff alleges that he is a consumer, who incurred a debt for personal, family, or household purposes after he defaulted on a $200 Ace Cash loan. [#1 at ¶¶ 6, 38-39] Plaintiff further alleges that Defendant is a "debt collector" as defined by the statute, because its primary business purpose is the collection of delinquent debts, it regularly collects debts by mail or telephone, it acquired rights to the subject debt after it was in default, and it attempted to collect the subject debt by telephone. [*Id.* at ¶¶ 7, 40-43] *See* 15 U.S.C. § 1692a(2), (6). Plaintiff specifically claims that Defendant's debt collection practices violated the following six sections of the FDCPA: 1692b, 1692c, 1692d, 1692e, 1692f, and 1692g. [*Id.* at 7-11] The Court addresses each alleged FDCPA violation in turn below.

### a. 15 U.S.C. § 1692b

Plaintiff first claims that Defendant violated § 1692b(2) and b(3) by communicating about the subject debt with Plaintiff's family members. [#1 at 7-8] Pursuant to Section 1692b, if a debt collector communicates "with any person other than the consumer for the purpose of acquiring location information about the consumer," the debt collector may "not state that such consumer owes any debt." 15 U.S.C. § 1692b(2). The debt collector also may "not communicate with any such person more than once," unless the contacted person requests the debt collector to communicate with her, or "the debt collector reasonably believes" that the person contacted provided erroneous or incomplete location information about the consumer, and "that such person now has correct or complete location information." *Id.* § 1692b(3). Plaintiff's allegations establish that Defendant violated Section 1692b here. Plaintiff alleges that Defendant called Plaintiff's fiancé and

Plaintiff's fiancé's daughter multiple times, and in those calls, Defendant disclosed that Plaintiff owed the subject debt. [#1 at ¶¶ 8, 10-11, 45] Defendant could not have conceivably been contacting those individuals for more accurate location information regarding Plaintiff, because according to the Complaint, Plaintiff contacted Defendant directly to work out payment of the subject debt and began making payments. [*Id.* at ¶¶ 14-15] Accordingly, the Court **RECOMMENDS** that default judgment be entered in favor of Plaintiff and against Defendant on Plaintiff's claims for violations of § 1692b(2) and 1692b(3).

### b. 15 U.S.C. § 1692c

Plaintiff next alleges that Defendants violated § 1692c(a)(1) and 1692c(b). [#1 at 8] Debt collectors may not communicate with a consumer in connection with the collection of any debt "at any unusual time . . . or a time . . . known or which should be known to be inconvenient to the consumer." 15 U.S.C. § 1692c(a)(1). Unless the debt collector knows otherwise, the debt collector must "assume that the convenient time for communicating with a consumer" is after 8:00 a.m. and before 9:00 p.m. *Id.* Section 1692c also prohibits a debt collector from communicating "in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector," unless the debt collector has consent directly from the consumer, or express permission from a court of competent jurisdiction. *Id.* § 1692c(b).

Plaintiff alleges that on February 2, 2019, Defendant called Plaintiff nine times within five minutes, beginning at 7:20 a.m. [#1 at ¶¶ 19, 50] Plaintiff further claims that Defendant called Plaintiff's fiancé and Plaintiff's fiancé's daughter multiple times

9

regarding the subject debt, even though they had no connection to the debt. [*Id.* at ¶¶ 8, 10-11, 45, 52] Accepting these allegations as true, Plaintiff has established that Defendant violated § 1692c(a)(1) and 1692c(b). Accordingly, the Court **RECOMMENDS** that default judgment be entered in favor of Plaintiff and against Defendant on Plaintiff's claims for violations of § 1692c(a)(1) and 1692c(b).

### c. 15 U.S.C. § 1692d

Plaintiff also contends that Defendant violated § 1692d, 1692d(2), and 1692d(5). [#1 at 9] Section 1692d of the FDCPA prohibits debt collectors from "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Debt collectors are specifically prohibited from utilizing "obscene or profane language[,] the natural consequence of which is to abuse the hearer," and from "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." *Id.* § 1692d(2), (5). The Court finds that Plaintiff's well-pleaded allegations have established that Defendant violated this section. Plaintiff alleges that Defendant's representative called Plaintiff a "piece of shit" when Plaintiff demanded that Defendant stop contacting him. [#1 at ¶¶ 20, 54] Plaintiff also alleges that Defendant caused Plaintiff's cell phone to ring repeatedly, with several calls made to Plaintiff over consecutive days, including Defendant calling Plaintiff nine times in five minutes on February 2, 2019. [*Id.* at ¶¶ 19, 22, 55] Defendant made these repeated calls despite Plaintiff's demands that Defendant stop contacting him. [*Id.* at ¶¶ 17-18, 20-21, 53] Accordingly, the Court **RECOMMENDS** that default

judgment be entered in favor of Plaintiff and against Defendant on Plaintiff's claims for violations of § 1692d, 1692d(2), and 1692d(5).

### d. 15 U.S.C. § 1692e

Next, Plaintiff alleges that Defendant's actions were in violation of five subsections of § 1692e: 1692e, 1692e(4), 1692e(5), 1692e(7), and 1692e(10). [#1 at 9-10] Under Section 1692e, debt collectors "may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e, including using "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer," *id.* § 1692e(10). Accordingly, debt collectors may not represent or imply "that nonpayment of any debt will result in the arrest or imprisonment of any person . . . unless such action is lawful and the debt collector or creditor intends to take such action." *Id.* § 1692e(4). Relatedly, Section 1692e also bans debt collectors from "threat[ening] to take any action that cannot legally be taken or that is not intended to be taken," or from making a "false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer." *Id.* § 1692e(5), (7).

Plaintiff alleges that Defendant violated Section 1692e by falsely threatening to file criminal charges against Plaintiff for "defrauding a financial institution." [#1 at ¶¶ 14, 58] Defendant falsely represented that Plaintiff would face criminal charges in an effort to collect on the subject debt. As Plaintiff alleges, "Defendant did not intend to file criminal charges against Plaintiff," nor could it have because Plaintiff had not committed a crime.

[*Id.* at ¶ 14]  These allegations demonstrate that Defendant has violated Sections 1692e, 1692e(4), 1692e(5), 1692e(7), and 1692e(10).[4]

Accordingly, the Court **RECOMMENDS** that default judgment be entered in favor of Plaintiff and against Defendant on Plaintiff's claim for violations of 15 U.S.C. § 1692e, 1692e(4), 1692e(5), 1692e(7), and 1692e(10).

### e.  15 U.S.C. § 1692f

Plaintiff further claims Defendant violated 15 U.S.C. § 1692f.  [#1 at 10]  To establish a violation under § 1692f, Plaintiff "must show that the debt collector used unfair or unconscionable means 'in order to collect or to attempt to collect any debt.'"  *Huffman v. BC Servs., Inc.*, No. 16-cv-02431-KLM, 2017 WL 2537106, at *4 n.4 (D. Colo. June 9, 2017) (quoting 15 U.S.C. § 1692f).  Section 1692f "serves a backstop function, catching those 'unfair practices' which somehow manage to slip by" other provisions of 15 U.S.C. § 1692.  *Muzyka v. Rash Curtis & Assocs.*, No. 2:18-cv-01097 WBS, 2019 WL 2869114, at *6 (E.D. Cal. July 3, 2019) (quotation omitted).  In light of this purpose, many courts

---

[4] The Court concludes, however, that Plaintiff's allegations that Defendant threatened to serve Plaintiff with a civil lawsuit [#1 at ¶ 57] do not give rise to any claims under § 1692e. Plaintiff admits that he had defaulted on the subject debt, and that Defendant had acquired the right to collect on that debt while it was in default.  [*Id.* at ¶¶ 6-7]  Plaintiff also acknowledges that while he made some payments to Defendant on the subject debt, by January 30, 2019, he was no longer financially able to make the agreed upon payments.  [*Id.* at ¶¶ 15, 17]  Plaintiff does not allege that he satisfied all debts owed to Defendant, and thus the Court cannot conclude with certainty that any civil litigation could not be initiated against Plaintiff, or that Defendant did not intend to take such action.  *See, e.g.*, *Little v. Portfolio Recovery Assocs., LLC*, 548 F. App'x 514, 516 (10th Cir. 2013) (finding §1692e(5) claim was conclusory and did not "allege[] any facts supporting an inference that [defendant's] threats to litigate were legally proscribed or not made in good faith").  *Cf. Kuberski*, 2012 WL 2943726, at *10 (finding plaintiff had established a violation of § 1692e, where plaintiff alleged that defendant misrepresented the legal status of plaintiff's debt by contending that plaintiff owed a debt, when plaintiff's debt was already paid in full).

have "dismissed claims under 15 U.S.C. § 1692f where such claims are based on facts that are also the basis for another more specific FDCPA claim." *Id.* (collecting cases); *see also Lembach v. Bierman*, 528 F. App'x 297, 303-04 (4th Cir. 2013) (dismissing § 1692f claims where "there were no allegations of any unfair or unconscionable conduct distinct from the § 1692e allegations"); *Gorman v. Express Recovery Servs., Inc.*, No. 1:17CV115DAK, 2018 WL 5268207, at *6 (D. Utah Oct. 23, 2018) ("A claim under § 1692f will be deemed deficient . . . if it does not identify any misconduct beyond that which [the plaintiff] assert[s] violates other provisions of the FDCPA." (alterations in original) (quotations omitted) (collecting cases)); *Winberry v. United Collection Bureau, Inc.*, 697 F. Supp. 2d 1279, 1292 (M.D. Ala. 2010) (observing that there is a "growing consensus, at least among district courts, that a claim under § 1692f must be based on conduct either within the listed provisions [of that section], or be based on conduct which falls outside of those provisions, but which does not violate another provision of the FDCPA"). *But see Vangorden v. Second Round, Ltd. P'ship*, 897 F.3d 433, 437 (2d Cir. 2018) (finding "§ 1692e and § 1692f each proscribe a 'non-exhaustive' list of specific unfair practices, with this court recognizing that the same conduct may support claims brought under multiple subsections").

The Court finds the weight of authority persuasive here and determines that Plaintiff's claims under § 1692f are duplicative of Plaintiff's claims under other provisions of the FDCPA. First, Plaintiff alleges that Defendant unconscionably harassed Plaintiff with high volume phone calls and text messages. [#1 at ¶¶ 59-60] Defendant's repeated contact of Plaintiff is conduct the Court has already determined violated § 1692d and 1692d(5), and therefore the repeated phone calls also "cannot be the basis for a separate

claim under § 1692f." *Turner v. Prof'l Recovery Servs., Inc.*, 956 F. Supp. 2d 573, 581 (D.N.J. 2013) (citing cases); *see also Schumacher v. Credit Prot. Ass'n*, No. 4:13-cv-00164-SEB-DML, 2015 WL 5786139, at *12 (S.D. Ind. Sept. 30, 2015) (finding plaintiff's § 1692f claim, premised on defendant repeatedly making phone calls to him, failed as a matter of law because that conduct was addressed in plaintiff's § 1692d and 1692d(5) claims).  Second, Plaintiff alleges that Defendant unfairly threatened to file a criminal lawsuit against Plaintiff, and unconscionably called Plaintiff a "piece of shit."  [#1 at ¶¶ 61-62]  These allegations already form the basis of Plaintiff's claims under §§ 1692d(2) and 1692e(4), (7), and (10).[5]  *See, e.g.*, *Mills v. Turner*, No CV 15-13267-MLW, 2017 WL 3670967, at *11 (D. Mass. Aug. 25, 2017) (finding basis for § 1692f claim was redundant of the § 1692e claim where plaintiff "relie[d] on the same conduct and d[id] not offer any additional or different evidence to support the section 1692f claim that defendant was unfair and/or unconscionable"); *McNamee v. Nationstar Mortg., LLC*, No. 14-1948, 2015 WL 5174776, at *5 (S.D. Ohio Sept. 4, 2015) ("Because § 1692(f) is used to catch conduct that is *not* covered in the other sections of the FDCPA, and all of Plaintiffs' claims fall within subsections of § 1692(e), bringing a separate claim under § 1692(f) for conduct that fits more narrowly under other provisions of the FDCPA would be redundant, and contravenes the purpose of § 1692(f).").

Accordingly, the Court **RECOMMENDS** that Plaintiff's Motion be **DENIED** to the extent it seeks default judgment on the § 1692f claim.

---

[5] Plaintiff also repeats allegations that Defendant threatened to serve him with a civil lawsuit in support of his § 1692f claim.  [#1 at ¶ 61]  But these allegations do not amount to an FDCPA violation, for the reasons discussed above.

### f.  15 U.S.C. § 1692g

Plaintiff's final claim under the FDCPA is that Defendant violated 15 U.S.C. § 1692g. [#1 at 10-11]  Section 1692g requires a debt collector, within five days after its initial communication with the consumer, to send the consumer a written notice containing detailed information about the debt, including the amount of the debt, the name of the creditor to whom the debt is owed, that the debt will be assumed valid unless disputed by the consumer within 30 days, and that the debt collector will verify the debt if the consumer disputes the debt in writing.  15 U.S.C. § 1692g(a).  The five-day written notice requirement applies unless the debt collector conveyed the foregoing information during the initial communication.  *Id.*  During the 30-day period within which the consumer may dispute the debt, "[t]he debt collector's communications 'may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.'"  *Hamilton v. Capio Partners, LLC*, 237 F. Supp. 3d 1109, 1113 (D. Colo. 2017) (quoting 15 U.S.C. § 1692g(b)).  Most courts evaluate § 1692g claims under an objective "least-sophisticated-consumer" standard, which asks how the least sophisticated consumer, i.e. an individual with a "rudimentary amount of information about the world and a willingness to read a collection notice with some care," would interpret the notice received.  *Id.* (quotations omitted).  Under that standard, a notice is "overshadowing or contradictory" in violation of § 1692g "if it would make the least sophisticated consumer uncertain as to her rights." *Id.* (quotation omitted).

Plaintiff alleges here that Defendant violated § 1692g by demanding payment of the debt in its initial communication with Plaintiff.  [#1 at ¶ 63]  Plaintiff also claims both that Defendant failed to "properly" inform Plaintiff of his right to dispute the validity of the

subject debt [*Id.* at ¶ 63], but also that Defendant never sent Plaintiff "any correspondences notifying him of his rights pursuant to 15 U.S.C. § 1692g" at all [*id.* at ¶ 30]. Finally, Plaintiff alleges that Defendant failed to properly inform Plaintiff of his rights for debt verification during the initial communication, "in a manner which was not reasonably calculated to confuse or frustrate the least sophisticated consumer." [*Id.* at ¶ 63]

These allegations simply restate the statutory requirements, and are devoid of any detail concerning the content of Defendant's initial communication with Plaintiff, whether Defendant failed to "*properly*" notify Plaintiff of his right to dispute the validity of the debt after the initial communication [*id.* (emphasis added)], or whether Defendant failed to send any correspondence at all [*id.* at ¶ 30]. While the Court deems well-pleaded facts as true, the Court cannot accept "merely conclusory statements." *Villaneuva v. Account Discovery Sys., LLC*, 77 F Supp. 3d 1058, 1072 (D. Colo. 2015); *see also Johnson v. Riverwalk Holdings, Ltd.*, No. 12-cv-00427-WYD-GJR, 2013 WL 2338355, at *4 (D. Colo. May 29, 2013) (dismissing FDCPA claim because it was based on "merely . . . conclusory violations of the FDCPA without further factual enhancement"). As stated above, the least sophisticated consumer standard requires the Court to analyze notice and collection letters from the perspective of an individual with basic knowledge who has read the communications. Without any information as to the substance of the initial communication between Defendant and Plaintiff, or with respect to any follow up notice from Defendant thereafter, the Court cannot make this determination.

Accordingly, the Court **RECOMMENDS** that Plaintiff's Motion be **DENIED** to the extent it seeks default judgment on the § 1692g claim.

### g. Conclusion

For the foregoing reasons, the Court **RECOMMENDS** that Plaintiff's Motion be **GRANTED IN PART** and **DENIED IN PART** with respect to Plaintiff's claims under the FDCPA. Specifically, the Court **RECOMMENDS** that Plaintiff's Motion be **GRANTED** to the extent it seeks default judgment on the following claims, and that default judgment be entered in favor of Plaintiff and against Defendant on the following 12 FDCPA claims: §§ 1692b(2) and 1692b(3), 1692c(a)(1) and 1692c(b), 1692d, 1692d(2), and 1692d(5), 1692e, 1692e(4), 1692e(5), 1692e(7), and 1692e(10). The Court further **RECOMMENDS** that Plaintiff's Motion be **DENIED** to the extent it seeks default judgment on the claims under §§ 1692f and 1692g.

### 2. CFDCPA Claim

Plaintiff also alleges that Defendant's conduct violated the CFDCPA. [#1 at 13-15] Like the FDCPA, the CFDCPA "shares the 'remedial purpose of protecting consumers against debt collection practices that take advantage of . . . persons who receive a debt collection communication.'" *Peterson-Hooks v. First Integral Recovery, LLC*, No. 12-cv-01019-PAB-BNB, 2013 WL 2295449, at *5 (D. Colo. May 24, 2013) (alteration in original) (quoting *Flood v. Mercantile Adjustment Bureau, LLC*, 176 P.3d 769, 773 (Colo. 2008)). "Because Congress did not intend for the FDCPA to preempt state regulation of debt collection practices, states may provide greater protection to consumers than those available under the FDCPA." *Id.* (citing 15 U.S.C. § 1692n). But individuals may not recover damages under the CFDCPA if they recover for "like provision[s]" under the FDCPA. Colo. Rev. Stat. § 5-16-113(7). This District has defined a "like provision" as

"an overlapping or equivalent provision contained in both statutes." *Peterson-Hooks*, 2013 WL 2295449, at *5 (collecting cases).

Here, Plaintiff's CFDCPA claim is premised on the same facts as those supporting Plaintiff's FDCPA § 1692d claim. Identical to § 1692d, the CFDCPA prohibits debt collectors from "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." Colo. Rev. Stat. § 5-16-106(1). The CFDCPA also specifically prohibits the "use of obscene or profane language" in connection with collecting a debt, and "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number," *id.* § 5-16-106(1)(b), (e), as in § 1692d(2) and 1692d(5) of the FDCPA.

Again, Plaintiff alleges that Defendant repeatedly called and texted Plaintiff's cell phone, even after Plaintiff told Defendant to stop contacting him, and that Defendant called Plaintiff "a piece of shit" in order to belittle him, and induce him into paying the debt. [#1 at ¶¶ 20, 22, 87-88] For the same reasons discussed with respect to Plaintiff's claims under Section1692d of the FDCPA, Plaintiff has also established violations of his rights under the CFDCPA. *See Williams v. LVNV Funding, LLC*, No. 14-cv-01356-MEH, 2014 WL 4066612, at *8 (D. Colo. Aug. 14, 2014). Accordingly, the Court **RECOMMENDS** that Plaintiff's Motion be **GRANTED** to the extent it seeks default judgment on Plaintiff's CFDCPA claim, and that default judgment be entered in favor of Plaintiff and against Defendant on that claim.

The Court notes that Plaintiff does not include any request for damages under the CFDCPA in the Motion. [*See generally* #36] Nor could Plaintiff recover damages for

Defendant's violations of the CFDCPA, because Plaintiff has only asserted claims under the CFDCPA for which there are like provisions under the FDCPA. *Cf. Ramirez v. Vero Beach Fin. Grp., Inc.*, No. 15-cv-00002-WYD-KLM, 2015 WL 3799699, at *3 (D. Colo. June 17, 2015) (finding plaintiff was entitled to statutory damages under both the FDCPA and CFDCPA because plaintiff did not seek to recover under overlapping provisions of those statutes).

### 3. TCPA Claim

Finally, Plaintiff alleges that Defendant's conduct violated the TCPA. [#1 at 11-13] As relevant here, the TCPA prohibits any person, absent prior express consent from the recipient, from "mak[ing] any call," other than for emergency purposes, "using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service."[6]  47 U.S.C. § 227(b)(1)(A)(iii).  Thus to prevail on his claim under § 227(b)(1)(A)(iii), Plaintiff must establish that Defendant used an automatic telephone dialing system ("ATDS") to call his cell phone, without his consent and for a non-emergency purpose.

The TCPA defines ATDS as "equipment which has the capacity . . . to store or produce telephone numbers to be called, using a random or sequential number generator," and "to dial such numbers."  47 U.S.C. § 227(a)(1).  "Courts have found that alleging a click or pause at the beginning of the call is sufficient to plead the use of an

---

[6] A text message to a cell phone also constitutes a call under § 227(b)(1)(A)(iii). *See, e.g.*, *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 667 (2016); *see also Krady v. Eleven Salon Spa*, No. 16 CV 5999 (MKB)(RML), 2017 WL 6541443, at *3 (E.D.N.Y. July 28, 2017) (discussing authority finding that a "call" encompasses both telephone calls and text messages to cell phone numbers), *report and recommendation adopted*, 2017 WL 6542462 (E.D.N.Y. Dec. 21, 2017).

ATDS." *Heidarpour v. Empire Capital Funding Grp. Inc.*, No. 18-cv-00250-YGR (KAW), 2018 WL 6809186, at *4 (N.D. Cal. Oct. 25, 2018) (collecting cases), *report and recommendation adopted*, 2019 WL 366619 (N.D. Cal. Jan. 30, 2019); *see also Hampton v. Barclays Bank Del.*, No. 18-4071-DDC-ADM, 2019 WL 4256371, at *5 (D. Kan. Sept. 9, 2019) (finding a plaintiff can state a plausible TCPA claim by "detail[ing] whether there was a pause upon his answering the call, the content of the pre-record messages . . . or any other fact that would support . . . [the] allegation that he received calls from an [ATDS]" (quotation omitted)).

Plaintiff has alleged sufficient facts to demonstrate a violation of § 227(b)(1)(A)(iii) by Defendant here. Plaintiff states that he never provided his cell phone number to Defendant or otherwise expressly consented to Defendant's phone calls. [#1 at ¶ 24] Plaintiff indicates that, upon information and belief, Defendant placed its calls to Plaintiff's cell phone using an ATDS, because when Plaintiff answered calls from Defendant, there was a three-second pause and period of dead air between the time Plaintiff said "hello," and when he was connected to a live agent on behalf of Defendant. [*Id.* at ¶¶ 25-26, 28] Additionally, Plaintiff specifies that Defendant called and texted him numerous times, including calling him nine times in one day in February 2019, and identifies the phone number most often associated with communications from Defendant. [*Id.* at ¶¶ 18-19, 22, 29; *see also* #42-1 at 2] Finally, Plaintiff alleges that none of Defendant's calls were made for the purposes of an emergency, but rather were made in an effort to recover the subject debt [#1 at ¶¶ 10-19, 69] These allegations are sufficient to establish a TCPA claim under § 227(b). *See Cunningham v. Crosby Billing Servs., Corp.*, No. 4:18-CV-00043-ALM-CAN, 2018 WL 6424792, at *4 (E.D. Tex. Oct. 14, 2018) (collecting cases)

(finding plaintiff demonstrated TCPA violations by alleging that he never consented to being contacted through ATDS, the calls received were not related to an emergency purpose, there was a period of delay upon answering which suggested use of ATDS, and the frequency of calls and the phone number that the calls were placed from), *report and recommendation adopted*, 2018 WL 6424695 (E.D. Tex. Dec. 5, 2018).  Accordingly, the Court **RECOMMENDS** that Plaintiff's Motion be **GRANTED** to the extent it seeks default judgment on his claim under § 227(b)(1)(A)(iii) of the TCPA and that default judgment be entered in favor of Plaintiff and against Defendant on the TCPA claim.

### B. Damages

While the Court accepts the well-pleaded facts of the complaint as true on a motion for default judgment, allegations relating to the amount of damages are generally not accepted as true.  *Magic Carpet Ski Lifts, Inc. v. S&A Co., LTD*, No. 14-cv-02133-REB-KLM, 2015 WL 4237950, at *6 (D. Colo. June 8, 2015), *report and recommendation adopted*, 2015 WL 4162586 (D. Colo. July 9, 2015).  Instead, the court must hold a hearing on the damages claimed before entering default judgment, unless "the amount claimed is a liquidated sum or one capable of mathematical calculation."  *Hunt v. Inter-Globe Energy, Inc.*, 770 F.2d 145, 148 (10th Cir. 1985).  "If the damages sum is not certain or capable of easy computation, the court may hold whatever hearing or inquiry it deems necessary."  *Applied Capital, Inc. v. Gibson*, 558 F. Supp. 2d 1189, 1202 (D.N.M. 2007); *see also Top Rank, Inc. v. Fey*, No. 08-cv-00480-RPM, 2009 WL 1384171, at *3 (D. Colo. May 15, 2009) ("Actual proof must support any default judgment for money damages where there is an uncertainty as to the amount."  (citing *Klapprott v. United States*, 335 U.S. 601, 611-12 (1949)).

Plaintiff seeks damages in the following amounts: $38,500 in statutory damages under the FDCPA and TCPA,[7] $3,997.75 in attorneys' fees and costs, plus post-judgment interest. [#36 at 3; *see also* #36-2 at 2; #36-3] The Court addresses each category of damages in turn.

## 1. FDCPA Damages

The FDCPA sets a maximum amount of damages of $1,000 per proceeding. 15 U.S.C. § 1692k(a)(2)(A). Accordingly, "regardless of whether Plaintiff establishes a single violation or several violations of the FDCPA, the amount of statutory damages remains the same." *Kuberski*, 2012 WL 2943726, at *12. "All that is required for an award of statutory damages is proof that the statute was violated, although a court must then exercise its discretion to determine how much to award, up to the $1,000.00 ceiling." *Id.* (quoting *Savino v. Comput. Credit Inc.*, 164 F.3d 81, 86 (2nd Cir. 1998)).

In evaluating the amount of statutory damages to award under the FDCPA, the Court must consider "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." 15 U.S.C. § 1692k(b)(1). "[M]aximum statutory damages . . . should be reserved for egregious violations of the FDCPA," including "cases where the defendant repeatedly uses abusive language, improperly threatens legal action or the use of self-help, or aggressively intrudes on a consumer's home, place of employment, or p[eace] of

---

[7] Plaintiff does not seek statutory damages under the CFDCPA in the Motion. [*See generally* #36] As discussed above, individuals may not recover damages under the CFDCPA if they recover for "like provision[s]" under the FDCPA, Colo. Rev. Stat. § 5-16-113(7), and Plaintiff only asserts violations of the CFDCPA corresponding to identical provisions of the FDCPA here.

mind." *Lassiter v. Integrity Sol. Servs., Inc.*, No. 13-cv-00268-PAB-MJW, 2014 WL 1977216, at *2 (D. Colo. May 15, 2014) (quotation omitted).

As discussed above, the Court has determined that Defendant violated 12 provisions of the FDCPA. Plaintiff alleges that Defendant called Plaintiff incessantly, on consecutive days, and up to nine times per day, despite Plaintiff's demands for Defendant to stop. [#1 at ¶¶ 17- 22] Plaintiff further alleges that Defendant improperly contacted his family members regarding the subject debt, falsely threatened Plaintiff with criminal charges, and used obscenities in its communications with Plaintiff. [*Id.* at ¶¶ 10-11, 14, 20] In light of Defendant's conduct, amounting to numerous violations of the FDCPA, and Defendant's failure to participate in this litigation, the Court finds that Defendant's noncompliance was intentional and justifies the maximum penalty under the FDCPA. *See, e.g.*, *Kuberski*, 2012 WL 2943726, at *12, *12 n.5 (finding defendant's failure to answer the complaint, violation of three provisions of the FDCPA, and six calls to plaintiff in nine days, demonstrated persistent and intentional conduct justifying the maximum statutory award under the FDCPA); *Rivera v. Nat'l Check Processing, LLC*, No. SA-10-CA-605-XR, 2011 WL 996340, at *2 (W.D. Tex. Mar. 17, 2011) (awarding $1,000 in statutory damages where defendant "continuously" called plaintiff's home and work phones, threatening "to have her arrested, bring charges against her, and to add attorneys' fees to the debt"). Accordingly, the Court **RECOMMENDS** that Plaintiff's Motion be **GRANTED** to the extent it seeks statutory damages under the FDCPA, and that Plaintiff be awarded the maximum award of $1,000 in statutory damages under the FDCPA.

### 2. TCPA Damages

Plaintiff seeks $37,500 in statutory damages under the TCPA for 25 calls made to him intentionally by Defendant. [#36 at ¶ 10] On September 27, 2019, this Court ordered Plaintiff to file a supplemental brief, with any necessary supporting exhibits, verifying and describing with greater particularity the number of TCPA violations alleged. [#39] Plaintiff filed a supplemental brief on October 11, 2019. [#42]

A plaintiff may recover $500 in damages for each violation of the statute under the TCPA. 47 U.S.C. § 227(b)(3)(B). In calculating statutory damages under the TCPA, courts "determine[] the number of phone calls in violation of the TCPA based on allegations in the complaint or upon additional evidence, such as screenshots of the plaintiff's phone showing the alleged violations." *Cunningham,* 2018 WL 6424792, at *8 (collecting cases); *see also Cunningham v. Greenstar Capital Sols., LLC*, No. 4:18-CV-000161-ALM-CAN, 2018 WL 4572711, at *7 (E.D. Tex. Aug. 1, 2018) (finding plaintiff had shown defendant liable for 47 violations of the TCPA based upon screenshots of the violative call logs, an affidavit, hearing testimony, and allegations in the complaint), *report and recommendation adopted*, 2018 WL 4567706 (E.D. Tex. Sept. 24, 2018); *Smith v. Reliant Grp. Debt Mgmt. Sols.*, No. 16-10325, 2018 WL 3753976, at *2, *8 (E.D. Mich. Aug. 8, 2018) (noting substance and frequency of early calls were unknown to the court, but awarding statutory damages for subsequent calls that were tracked by plaintiff in a call log that was entered into evidence); *Krady*, 2017 WL 6541443, at *5 (awarding statutory damages where plaintiff had submitted evidence sufficient to establish that defendant had sent 36 text messages in violation of the TCPA, in the form of plaintiff's declaration, and a printout of screenshots taken from plaintiff's phone).

Additionally, the statute allows the court to increase the award up to three times the statutory amount "[i]f the court finds that the defendant willfully or knowingly violated" the TCPA. 47 U.S.C. § 227(b)(3). There is a "split of authority" as to the meaning of willfully or knowingly, "with some courts holding that it means that the defendant should have known that its conduct might violate the statute, and others holding that it instead only requires that the defendant's conduct be volitional, i.e. it intended to dial the telephone number at issue." *Warnick*, 2014 WL 12537066, at *16 (quotation omitted). This District has held that a plaintiff must only show that a defendant's actions were intentional—not that it was aware it was violating the statute. *Id.*; *see also Lee v. Loandepot.com, LLC*, No. 14-CV-01084-EFM, 2016 WL 4382786, at *8 (D. Kan. Aug. 17, 2016) ("This Court chooses to follow the direction of the [Federal Communications Commission] and those courts who have found that the plaintiff need not prove that the defendant had knowledge of the TCPA's provisions to establish a knowing or willful violation.").

The Court adopts that approach here and finds that a defendant acts willfully or intentionally when it continues to call or text after the plaintiff requests that the communications stop. *See, e.g.*, *Warman v. Law Office of Daniel M. Slane*, 14-CV-700 (LJV), 2017 WL 971196, at *6 (W.D.N.Y. Mar. 13, 2017) (awarding treble damages under the TCPA for calls made after plaintiff "asked that the calls stop"); *Lee*, 2016 WL 4382786, at *9 (finding genuine issue of fact regarding whether defendant's violation of the TCPA was knowing and willful after the third call, where plaintiff submitted an affidavit stating that he informed defendant on the third and fourth calls that it had the wrong number); *Warnick*, 2014 WL 12537066, at *17 (noting that for plaintiff to prove defendants acted

knowingly and willfully, plaintiff must "show that [Defendants] knew that Plaintiff did not consent to the phone calls" (quotation omitted)).

Applied here, Plaintiff has demonstrated that Defendant made 15 willful and intentional calls in violation of the TCPA. According to the Complaint, Plaintiff first demanded that Defendant stop calling him on January 30, 2019. [#1 at ¶ 17] Defendant nevertheless persisted and called Plaintiff twice on January 31, 2019, three times on February 1, nine times on February 2, and once on February 4.[8] [*Id.* at ¶ 19; #42-1 at 2] These calls were plainly intentional as they were made after Plaintiff told Defendant to stop calling him. Plaintiff is thus entitled to $1,500 in treble damages for each of the 15 calls Defendant made to him after January 30, amounting to a total of $22,500. Though in the Motion Plaintiff seeks statutory damages under the TCPA in the amount of $37,500, corresponding to 25 phone calls [#36 at ¶ 10], Plaintiff has not presented evidence of 25 intentional phone calls. Accordingly, the Court **RECOMMENDS** that Plaintiff's Motion be **GRANTED IN PART** and **DENIED IN PART** to the extent it seeks statutory damages under the TCPA. Specifically, the Court **RECOMMENDS** that Plaintiff be awarded $22,500 in statutory damages under the TCPA, but that the Motion be **DENIED** to the extent it seeks $37,500 in TCPA statutory damages.

---

[8] At the direction of the Court, Plaintiff filed a call log in support of the claimed violations of the TCPA, which demonstrates 15 calls made by Defendant to Plaintiff, after Plaintiff had demanded that the calls stop. [#42-1] Plaintiff believes he has received more than 30 calls in violation of the TCPA, and has issued a subpoena to his cell phone provider, which he anticipates will show numerous additional violations. [#42 at 2 n.1] Nevertheless, the Court must base its damages calculation on the evidence currently before the Court, as set forth in Plaintiff's Complaint and the supplemental documentation. [##1, 42, 42-1] *See also Cunningham*, 2018 WL 6424792, at *8 (collecting cases); *Smith*, 2018 WL 3753976, at *2, *8; *Krady*, 2017 WL 6541443, at *5.

### 3.  Attorneys' Fees and Costs

Plaintiff seeks $3,512.75 in attorneys' fees and $485 in costs for a total of $3,997.75.  [#36 at 3; #36-1; #40]  On September 18, 2019, this Court entered a minute order directing Plaintiff to supplement the Motion, specifying the experience, reputation, and ability of his attorney and paralegal.  [#38]  Plaintiff filed a supplemental brief in support of his attorneys' fees request on October 2, 2019.  [#40]

The Court determines a reasonable attorneys' fees award by calculating the "lodestar amount"—the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Auto-Owners Ins. Co. v. Bridgewater Int'l, Inc.*, No. 15-cv-01665-PAB-KLM, 2018 WL 1046791, at *1 (D. Colo. Feb. 21, 2018) (first quoting *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998), then quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

The party claiming attorneys' fees "has the burden of proving hours to the district court by submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks."  *Id.* (quoting *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1250 (10th Cir. 1998)).  The requesting party must "demonstrat[e] that counsel used 'billing judgment' in winnowing down the hours actually spent to those reasonably expended."  *Id.* (quoting *Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1257 (10th Cir. 2005)).  The court should "consider whether the amount of time spent on a particular task appears reasonable in light of the complexity of the case, the strategies pursued, and the responses necessitated by an opponent's maneuvering."  *Id.*  The court then determines whether the hourly rate is reasonable, based on "the prevailing market

rate in the relevant community for an attorney of similar experience." *Id.* at *2. Finally, with the lodestar amount calculated, "the court may adjust that figure upward or downward to account for the particularities of the suit and its outcome," including the time and labor required, novelty of the issues presented in the case, and the experience, reputation, and ability of the attorneys. *Ross v. Jenkins*, No. 17-2547-DDC-TJJ, 2018 WL 2335853, at *25 (D. Kan. May 23, 2018) (quotations omitted).

With respect to reasonableness of time, this District has recognized that attorneys' fees in a "default judgment posture" case should reflect the "straightforward" nature of the case, and the lack of "need for multiple strategies or responses to the maneuvering of the opposing parties," because defendants have not responded or appeared. *Big O Tires, LLC v. C&S Tires, Inc.*, No. 16-cv-00725-MSK-NYW, 2017 WL 2263079, at *14 (D. Colo. May 24, 2017). Plaintiff has submitted time records indicating how the attorney and the paralegal's hours were allotted to specific tasks here. [##36-1; 40-1] The billing entries properly reflect a reasonable amount of time spent on tasks in order to initiate this action, and file for entry of default and default judgment, amounting to 6.8 hours by Plaintiff's attorney, and 1.45 hours by the paralegal. [*Id.*; *see also* #40 at ¶ 12] *See Auto-Owners*, 2018 WL 1046791, at *1.

With respect to reasonable billing rate, Plaintiff's attorney, Marwan Daher, requests a billing rate of $475 per hour, and Plaintiff's paralegal requests a billing rate of $195 per hour. [#40 at ¶ 12] Attorney Daher states that he has been admitted to the practice of law since 2017, is a member of good standing in numerous courts, and has substantial experience representing clients in consumer protection cases, including in FDCPA and TCPA cases. [*Id.* at ¶¶ 3-5] Plaintiff's attorney further notes that his billing rate is justified

by his success on behalf of clients, because he has been awarded with the Rising Star attorney distinction, and also that the billing rate is consistent with amounts charged by attorneys practicing consumer law. [*Id.* at ¶¶ 8, 11]

In 2015, this District noted that the "weight of authority establish[ed] that the prevailing rate in Colorado [wa]s $200-$250 per hour for attorneys representing clients in FDCPA cases, depending on the attorneys' experience." *Villaneuva*, 77 F. Supp. 3d at 1081 (collecting cases). The Court also notes that as of 2015-2016, the median billing rate for attorneys practicing consumer law in Colorado was $400 per hour, and the median billing rate specifically for attorneys handling TCPA cases was $450 per hour. Ronald L. Burdge, *United States Consumer Law Survey Report 2015-2016*, at 46-47, *available at* https://www.nclc.org/images/pdf/litigation/tools/atty-fee-survey-2015-2016.pdf ("Consumer Law Report Survey"); *see also Rodriguez v. Luchey & Mitchell Recovery Sols., LLC*, No. 12-cv-03035-PAB-KMT, 2013 WL 6068458, at *2 (D. Colo. Nov. 18, 2013) (looking to Consumer Law Report Survey for guidance in determining reasonable billing rate). However, the median number of years in practice corresponding to the Consumer Law Survey Report billing rates was 17.5. Consumer Law Report Survey at 46. In contrast, the average attorney hourly rate for attorneys practicing consumer law in Denver with one to three years of experience was $225 per hour. *Id.* at 198. More generally, the Colorado Bar Association's 2017 Economic Survey demonstrates that in 2016, the average billing rate was $192 per hour for an attorney with between one and two years of experience, and $203 per hour for an attorney with between three and four years of experience. *2017 Economics of Law Practice Survey*, Colorado Bar Association, at 35,

*available at* http://www.cobar.org/portals/COBAR/repository/2017EconomicSurvey.pdf ("CBA Economic Survey").

The Court concludes that the billing rate requested by Plaintiff's attorney is quite high in relation to his experience of less than three years, as compared to the average rates determined by this District in FDCPA cases, attorneys with similar experience practicing consumer law in Denver, and attorneys with similar experience in the CBA Economic Survey. Considering all of the aforementioned rates, and also considering inflation, the Court reduces Attorney Daher's billing rate to a reasonable rate of $230 per hour. *See, e.g.*, *See Ross v. Jenkins*, 325 F. Supp. 3d 1141, 1182 (D. Kan. 2011) (adjusting reasonable billing rate for inflation); *see also Hedge v. Dynamic Recovery Servs., Inc.*, No. 12-cv-01208-RM-BNB, 2014 WL 1016812, at *4 (D. Colo. Mar. 14, 2014) (approving attorneys' fees in FDCPA default judgment case of $325 per hour for partner with more than 20 years of experience in consumer protection litigation, $250 per hour for senior attorneys with eight and eleven years of experience in that field, and $200 per hour for a first year attorney).

As to paralegal Laura Dixon, Plaintiff seeks a billing rate of $195 per hour for her services, but Plaintiff has not provided any information about Ms. Dixon's experience, reputation, or ability, despite this Court's previous Order requesting additional information. [*See* #38]  This District has previously approved a paralegal billing rate of $190 per hour, but only for "a very experienced" paralegal. *Ebonie S. v. Pueblo Sch. Dist. 60*, No. 09-cv-0858-WJM-MEH, 2016 WL 1110442, at *3 (D. Colo. Mar. 22, 2016); *see also Brown v. Glob. Check Processing*, No. 13-cv-1805-WJM-MJW, 2014 WL 1882759, at *4 (D. Colo. May 12, 2014) (reducing attorneys' fees by 20% in 2014 case, in part because a

$150 hourly rate for paralegals "appear[ed] somewhat high").  The Consumer Law Report Survey lists the median paralegal rate for Colorado as $105.  *See* Consumer Law Report Survey, at 46.  Moreover, the CBA Economic Survey demonstrates that in 2016 the average billing rate for a paralegal, even with over 20 years of experience, was only $126 per hour.  CBA Economic Survey, at 40.  Because Plaintiff has not provided any support for exceeding these averages, and again taking inflation into account, the Court finds that an hourly rate of $115 is reasonable for the paralegal here.[9]  *See Rodriguez*, 2013 WL 6068458, at *2.

Applying the $230 hourly rate for Attorney Daher and the $115 hourly rate for Ms. Dixon to the hours billed (6.8 hours by Attorney Daher and 1.45 hours by Ms. Dixon) [#36-1; #40-1; #40 at ¶ 12], results in a reduced total of $1,730.75 in attorneys' fees.  Finally, the Court finds that the request for $485 in costs, consisting of the filing and service fee [#36-1 at 2; #40-1 at 3], is reasonable.  *See Big O Tires*, 2017 WL 2263079, at *15 (finding costs reasonable where "bulk of those costs [we]re attributable to the filing fee . . . and service on Defendants").  Accordingly, the Court respectfully **RECOMMENDS** that Plaintiff's Motion be **GRANTED IN PART** and **DENIED IN PART** to the extent Plaintiff seeks attorneys' fees and costs, and that Plaintiff be awarded $1,730.75 in attorneys' fees, and $485 in costs, for a total of $2,215.75 in attorneys' fees and costs.

### 4.  Post-Judgment Interest

Post-judgment interest "shall be allowed on any money judgment in a civil case recovered in a district court."  28 U.S.C. § 1961(a).  "Such interest shall be calculated

---

[9] Some courts in this District have denied requests for attorneys' fees outright when the plaintiff failed to provide information about the experience or qualifications of the attorneys or paralegals working on the case.  *See Villanueva*, 77 F. Supp. 3d at 1081-82.

from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding . . . the date of the judgment." *Id.* Post-judgment interest "shall be computed daily to the date of payment . . . and shall be compounded annually." *Id.* at § 1961(b).

Plaintiff is thus entitled to post-judgment interest on his damages award, consisting of the statutory damages and reasonable attorneys' fees and costs, as discussed above. *See, e.g.*, *Kelley v. City of Albuquerque*, No. CIV-03-507-JB/ACT, 2006 WL 1305038, at *3 (D.N.M. Apr. 12, 2006) (noting "the monetary award upon which postjudgment interest should accrue is the entire award granted by the district court," including attorneys' fees and costs). The provided rate for the 1-year constant maturity Treasury yield for the week preceding the instant Recommendation is 1.63%.[10] *See* 28 U.S.C. § 1961(a); *see also Selected Interest Rates Instruments, Yields in percent per annum: Weekly*, FRED Economic Data, https://fred.stlouisfed.org/release/tables?rid=18&eid=290&od= (last visited Oct. 21, 2019). Accordingly, the Court **RECOMMENDS** that the Court enter judgment in favor of Plaintiff with post-judgment interest at the rate of 1.63%, subject to variation depending on the date of the Court's final judgment, calculated "daily to the date of payment" and compounded annually. *See* 28 U.S.C. § 1961(b).

---

[10] The post-judgment interest rate will vary depending on when the Court ultimately issues its judgment. *See* 28 U.S.C. § 1961.

## IV. CONCLUSION

For the foregoing reasons, this Court respectfully **RECOMMENDS** that Plaintiff's Motion [#36] be **GRANTED IN PART** and **DENIED IN PART.**  More specifically, the Court **RECOMMENDS** that:

(1)   Plaintiff's Motion be **GRANTED** to the extent it seeks default judgment on the claims for violations of §§ 1692b(2) and 1692b(3), 1692c(a)(1) and 1692c(b), 1692d, 1692d(2), and 1692d(5), 1692e, 1692e(4), 1692e(5), 1692e(7), and 1692e(10) of the FDCPA, and that default judgment be entered in favor of Plaintiff and against Defendant on those FDCPA claims.

(2)   Plaintiff's Motion be **DENIED** to the extent it seeks default judgment on the claims under § 1692f and 1692g of the FDCPA.

(3)   Plaintiff's Motion be **GRANTED** to the extent it seeks default judgment on Plaintiff's CFDCPA claim, and that default judgment be entered in favor of Plaintiff and against Defendant on the CFDCPA claim.

(4)   Plaintiff's Motion be **GRANTED** to the extent it seeks default judgment on the claim under § 227(b)(1)(A)(iii) of the TCPA, and that default judgment be entered in favor of Plaintiff and against Defendant on that claim.

(5)   Plaintiff's Motion be **GRANTED** to the extent it seeks statutory damages under the FDCPA; **GRANTED IN PART** and **DENIED IN PART** to the extent it seeks treble damages under the TCPA; and **GRANTED IN PART** and **DENIED IN PART** to the extent it seeks attorneys' fees, as set forth below:

(6)   the Court enter judgment in Plaintiff's favor and against Defendant, in the amount of $25,715.75, consisting of: (1) $1,000 in statutory damages under the FDCPA; (2) $22,500 in statutory damages under the TCPA; and (3) $2,215.75 in attorneys' fees and costs; plus (4) post-judgment interest at the statutory rate of 1.63% on the foregoing amounts, if that is the applicable rate on the date of the Court's judgment, calculated daily from the date of judgment and compounded annually.[11]

---

[11] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate

DATED: October 21, 2019

BY THE COURT:

s/Scott T. Varholak
United States Magistrate Judge

---

review." *United States v. 2121 East 30th Street*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).